IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| DERRIC LAFURR BROWN, PRO SE, § <br> TDCJ-CID #1386492, § <br> Previous TDCJ-CID #758275, § <br> Previous TDCJ-CID #1089379, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> TEXAS DEPARTMENT OF CRIMINAL § <br>    JUSTICE ID, § <br> WILLARD KIPER, § <br> SHIRLEY K. HARBOUR, and § <br> MIKE RICHARDSON, § <br> § <br> Defendants. § | 2:09-CV-0101 |

**REPORT AND RECOMMENDATION**

Plaintiff DERRIC LAFURR BROWN, acting *pro se* and while a prisoner confined in the Texas Department of Criminal Justice, Correctional Institutions Division, has filed suit pursuant to Title 42, United States Code, section 1983 complaining against the above-named defendants and has been granted permission to proceed *in forma pauperis*. Defendants filed their Answer July 2, 2009, asserting various defenses, including Eleventh Amendment Immunity, Qualified Immunity, and Failure to Exhaust Administrative Remedies.

On September 2, 2009, an evidentiary hearing was held to consider the issues of Eleventh Amendment Immunity, Qualified Immunity, and Failure to Exhaust Administrative Remedies. Although this case was filed and the hearing was held before the Fifth Circuit decided *Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010), all necessary due process was provided by giving both

plaintiff and defendant notice that the hearing would be conducted on various issues, including, specifically, Failure to Exhaust Administrative Remedies and Qualified Immunity. Evidence was taken from both sides and records were examined in determining relevant facts. Argument was heard on the issues.

Plaintiff claims defendant TEXAS DEPARTMENT OF CRIMINAL JUSTICE ID is responsible for "overall actions and operations of their employees." Citing "policy, law and civil statute," plaintiff alleges, in general terms, "racial and religious profiling, discrimination, threats of reprisal and harassment for the use of grievance procedure against a certain TDC officer for violating plaintiff's First and Fourteenth Amendment right of freedom to practice his religion."

Plaintiff claims defendant Chaplain KIPER, interrupted the Islamic service "just out of biasness" "by standing in and waiting until certain Muslims finished talking to tell them that they can't talk (namely G4s)." Plaintiff says KIPER has said only the coordinator can speak during services but that Islamic Chaplain Talib said anyone can speak during Taleem or Jumah. KIPER is alleged to have used a vulgarity during a service and "distort[ed] documents to fit his lies" by putting plaintiff and five other Muslims off Islamic lay-in when Chaplain Talib had said to cancel all offender lay-ins until he was able to come to the Jordan Unit[1]. By these allegations, plaintiff appears to be referring to alleged actions by defendant KIPER during and following a February 6, 2009 service.

Plaintiff claims defendant Officer HARBOUR violated his rights by delaying Islamic services and alleges she has a personal vendetta against Islam. He says she told KIPER to take plaintiff and some other Muslim offenders off the Islamic lay-in list and stated that offender

---

[1]Plaintiff's May 15, 2009 Amended Complaint at handwritten page added to complete his Statement of Facts.

Wade would not be coordinator at the Jordan unit as long as her children had air to breath. She threatened to write the offenders a case for speaking.

Plaintiff claims defendant RICHARDSON, the Food Service Manager, provides benefits on holidays to other religious groups that he doesn't provide to Islamic groups on their holy days.

Plaintiff requests injunctive relief to stop all violations of his constitutional or federal rights and $20,000.00 "for mental pain and stress."

As set forth below, at the conclusion of the evidentiary hearing, the Magistrate Judge concluded that, while Failure to Exhaust applied to some claims, defendants KIPER, HARBOUR, and RICHARDSON were entitled to Qualified Immunity on all of defendant's claims. The Magistrate Judge further concluded Eleventh Amendment immunity barred claims against defendant TEXAS DEPARTMENT OF CRIMINAL JUSTICE ID and against defendants KIPER, HARBOUR, and RICHARDSON in their official capacities.

## THE LAW AND ANALYSIS

**Defendant TDCJ-CID and Defendants KIPER, HARBOUR and RICHARDSON in their Official Capacities**

Actions brought pursuant to Title 42, United States Code, section 1983, are subject to the sovereign immunity bar of the Eleventh Amendment. *Richardson v. Southern University*, 118 F.3d 450, 453 (5th Cir. 1997). The Eleventh Amendment bars suit against a state or a state official unless the State has waived its sovereign immunity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). This also applies to cases in which the state is the real party in interest. *Hander v. San Jacinto Junior College*, 519 F.2d 273, 278 (5th Cir. 1975). The eligibility of the Texas Department of Criminal Justice for

Eleventh Amendment immunity is settled law in this circuit. *Harris v. Angelina County*, 31 F.3d 331, 338 n.7 (5th Cir. 1994); *see, Loya v. Texas Department of Corrections*, 878 F.2d 860, 861 (5th Cir. 1989). The Texas Department of Criminal Justice is not a "person" within the meaning of section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). Plaintiff's claim against the Texas Department of Criminal Justice is barred by sovereign immunity and, thus, lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Further, to the extent plaintiff's claim for monetary relief is asserted against defendants KIPER, HARBOUR, and RICHARDSON in their officials capacities, it is barred because a suit against an official in his or her official capacity is actually a suit against the state. *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 361-62, 116 L.Ed.2d 301 (1991); *Sanders v. English*, 950 F.2d 1152, 1158 (5th Cir. 1992).

"Because [Eleventh Amendment] sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice." *Warnock v. Pecos County, Texas,* 88 F.3d 341, 343 (5th Cir.1996).

**MONETARY RELIEF UNDER THE PLRA**

Plaintiff has requested an award of monetary relief of $20,000.00 "for mental pain and stress." The Prison Litigation Reform Act requires a physical injury before a prisoner can recover for psychological damages. 42 U.S.C. § 1997e(e) ("No federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury."). Section 1997e(e) turns on the relief sought. *Geiger v. Jowers,* 404 F.3d 371, 375 (5th Cir.2005). The monetary relief sought by plaintiff for mental pain and

stress is not supported by a showing of physical injury and is clearly barred by section 1997e(e). Therefore, with respect to this claim, plaintiff has failed to state a claim on which relief can be granted.

**RLUIPA**

Plaintiff did not plead the Religious Land Use and Institutionalized Persons Act. To the extent plaintiff's claims should be examined under RLUIPA, whether or not RLUIPA creates an official capacity action for damages, such an action is barred by Texas' sovereign immunity, which is not waived by virtue of RLUIPA. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd*, *Sossamon v. Texas*, ___ U.S. ____, 131 S.Ct. 1651, 1658-59, 179 L.Ed.2d 700 (2011). Moreover, although the issue was not reviewed by the Supreme Court, the Fifth Circuit has determined RLUIPA does not create a cause of action against the defendants in their individual capacities. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009).

**Defendant RICHARDSON in his Individual Capacity**

Based upon plaintiff's representation at the hearing that he had not exhausted administrative remedies on any claim against defendant RICHARDSON, and based on defendants' assertion of the defense of failure to exhaust administrative remedies, plaintiff's claims against defendant RICHARDSON are barred pursuant to Title 42, United States Code, section 1997e(a), and plaintiff has failed to state a claim against defendant RICHARDSON on which relief can be granted.

Moreover, the evidence and argument presented at the September 2, 2009 evidentiary hearing demonstrates there was no dispute between the parties concerning the controlling facts.

The Court finds that defendant RICHARDSON is entitled to qualified immunity.

Qualified immunity is an affirmative defense which protects public officials from civil liability while performing discretionary functions when such acts or omissions were objectively reasonable in light of clearly established law. *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997) *citing Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir.), *cert. denied*, 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (19892); *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

In analyzing a defendant's right to qualified immunity, the Court must determine whether the defendant violated a clearly established constitutional right[2]. If so, the Court must also determine whether the constitutional right was clearly established at the time of the incident; and, if so, whether the conduct of the defendant was objectively unreasonable in light of contemporaneous clearly-established law. *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998). Although analysis under the first prong requires the court to consider currently applicable constitutional standards, analysis under the second prong requires a court to measure the objective reasonableness of an official's conduct with reference to the law as it existed at the time of the conduct in question. *Id*. (citing *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993).

In deciding which of the two prongs to address first, the court may utilize its sound discretion in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

The evidence and testimony presented at the September 2, 2009 evidentiary hearing was

---

[2]A preliminary inquiry must be made whether the plaintiff has asserted a violation of any constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Analysis at this stage is performed under the "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

that, on a Muslim holy day, Muslim inmates were allowed to hold a celebration together for two or three hours and were permitted to eat as a separate group in the gymnasium instead of eating at the regular time with all the other offenders in the chow hall. Some of the Muslim inmates felt the menu was not appropriate and that more serving utensils should have been provided. Some felt they should have received a special menu, *i.e.*, one with Islamic significance, similar to meals served on Thanksgiving, Christmas, or Halloween; others felt they should have been served chicken instead of the Mexican food which was provided. Still other inmates felt plastic cups should not have been used to serve the food and they should have been given regular serving utensils.

The Court notes that Thanksgiving and Halloween, as such, are not holy days in any religion and that Christmas, while it is a Christian holy day, is also a secular holiday in contemporary culture and is generally celebrated by both Christians and non-Christians alike.

In any event, uncontroverted testimony was presented that TDCJ policy requires the menu of a holy day meal to be the same menu as that served to general population inmates, with the only differences allowed being the time and place of the meal. The meal under consideration was served at 10:00 a.m., the normal time for the meal, but was served in the gymnasium, a special place. Attendance was limited to members of the Muslim community. The menu was Mexican food and serving utensils were provided, *i.e.*, large plastic perforated spoons, along with some plastic coffee cups with handles, intended to be used for serving. While there were more serving utensils that were not sent to the gymnasium, they were metal, not plastic like the ones that were provided. The metal utensils can pose a security risk. Defendant RICHARDSON testified he didn't want to sign out metal utensils because he didn't have sufficient staff at the

gym to keep track of them. He testified that if one or more of the metal utensils had gone missing, it would have resulted in security delays occasioned by searches and even lockdowns until the metal utensils were located. RICHARDSON further testified the plastic cups provided for use in serving were also frequently used in the chow hall when there were not enough serving utensils there.

Plaintiff did not contest any of this testimony.

Based on the evidence received at the evidentiary hearing, the Magistrate Judge concludes plaintiff did not allege facts showing a violation of any constitutional right by defendant RICHARDSON and, even if plaintiff had exhausted administrative remedies on his claim(s) against defendant RICHARDSON, defendant RICHARDSON is protected by qualified immunity from the claims asserted.

**Defendant HARBOUR in her Individual Capacity**

By his amended complaint, plaintiff alleged defendant HARBOUR violated his rights by delaying an Islamic service and further alleges she had a personal vendetta against Islam. Plaintiff says she told KIPER to take plaintiff and some other Muslim offenders off the Islamic lay-in list. Plaintiff also alleges defendant HARBOUR said offender Wade would not be coordinator at the Jordan unit as long as her children had air to breath and that she threatened to write offenders a case for speaking. At the hearing, plaintiff complained remarks HARBOUR had made on another occasion upset him so he couldn't focus and bring the right mindset to the Jumah service. Plaintiff has not exhausted administrative remedies on any of these claims against defendant HARBOUR and defendants have asserted the defense of failure to exhaust administrative remedies. Therefore, plaintiff's claims against defendant HARBOUR are barred

pursuant to Title 42, United States Code, section 1997e(a), and plaintiff has failed to state a claim against defendant HARBOUR on which relief can be granted.

Moreover, uncontroverted testimony was presented that defendant HARBOUR is assigned to the chapel in the education building and is in charge of security and safety. She takes the rosters and sign in sheets and calls offenders out for religious services. She also pat searches the offenders and searches whatever they bring with them, including their Korans. Defendant HARBOUR is also in charge of placing a tape recorder in the chapel for each Muslim service and checking it every 15 to 30 minutes to make sure it is still recording and hasn't been turned off. Defendant HARBOUR does not chose which offenders may attend services and does not have the authority to tell defendant KIPER to remove any inmate from the lay-in list for religious attendance.

Defendant HARBOUR testified that on February 6, 2009, she heard a disruption and entered the chapel during an argument between the two factions in the Muslim service. She stood at the podium waiting to see if they were going to quiet down. She testified the offenders at the east table and the offenders at the west table had squared off and were shouting at each other. She testified she found the tape recorder had been turned off and estimated it had been off for 15 to 30 minutes. She felt it had been turned off by an offender, since there was no one else to turn it off. Offenders are not allowed to turn off the tape recording, as all Muslim services are tape-recorded as a security measure because no security officers attend the services. When the offenders did not calm down, defendant HARBOUR felt the situation was getting out of control and called Lt. Price, who arrived with a response team.

Based upon the evidence presented at the hearing, the Magistrate Judge concludes

defendant HARBOUR acted reasonably in the face of an escalating disruption with clear potential for violence and reasonably felt it could present a danger to the security of the education building and the unit.  The actions taken by defendant HARBOUR were reasonable and plaintiff has not pointed to any act taken by HARBOUR which was unreasonable.  Therefore, defendant HARBOUR is entitled to qualified immunity.  Further, defendant's allegation of remarks by HARBOUR on other occasions, even if actually made by her, did not prevent plaintiff from the free exercise of his religion or violate any other of his rights.

**Defendant KIPER in his Individual Capacity**

By his amended complaint, plaintiff claims defendant KIPER interrupted the Islamic service "just out of biasness [sic]" by saying only the coordinator can speak during services and telling some offenders they couldn't talk.  The Court construes this to be a claim about the February 6, 2009 incident.

To the extent this is not a claim concerning the February 6, 2009 incident, plaintiff did not exhaust administrative remedies on this claim and defendants have asserted the affirmative defense of exhaustion.  Any such claim other than about the February 6, 2009 incident made against defendant KIPER is barred pursuant to Title 42, United States Code, section 1997e(a), and fails to state a claim against defendant KIPER on which relief can be granted.

By his amended complaint, supplemented by his testimony and argument presented at the September 2, 2009 evidentiary hearing, plaintiff claims defendant KIPER was at work on February 6, 2009, when some offenders in the Muslim service (including plaintiff) tried to tell the inmate coordinator how they thought he should conduct the service.  Plaintiff said he and five or six others were telling the inmate coordinator what he was doing wrong and what he

should actually do when defendant CO HARBOUR came in and pulled out the inmate coordinator. A response team arrived and went into the room. Plaintiff complained to defendant HARBOUR that the inmate coordinator wouldn't take instructions from the others in his group of about six offenders out of the sixteen at the service. Plaintiff said defendant KIPER came into the room at some point and, when one offender spoke out while another offender was talking, KIPER said that if anyone spoke out again, he would put him out.

Plaintiff testified the service briefly became more orderly and then "got out of control" again. Testimony was received at the hearing from defendant KIPER, defendant HARBOUR, and Officer Shipp that the disturbances during the service were extremely loud and the disagreement between the two offender factions was felt by defendant KIPER and security staff to present a danger to the security and safety of the offenders. Plaintiff did not contest that the disturbances were both repeated and loud. In fact, plaintiff's own testimony was that the service "got out of control" more than once. Although the response team was called, no disciplinary cases were given because officials concluded it was just an argument over leadership. No offenders were sent back to their cells. All were allowed to remain and complete the service.

Plaintiff claims that the next Wednesday, February 12, 2009, he and five or six other offenders who had been telling the inmate coordinator how he should conduct the service were called by defendant KIPER to his office and informed they were not going to be allowed to attend the service the next day. Defendant KIPER told them he had contacted the Islamic Chaplain for the area, Chaplain Talib, and told him of the disturbance. He said Chaplain Talib recommended he suspend services until Chaplain Talib could come to the unit to talk with the offenders.

Plaintiff testified defendant KIPER said he felt that course of action would be unfair to the offenders who were not causing a disturbance and, therefore, KIPER decided to suspend the attendance of those offenders he felt had caused the disturbance, that is, plaintiff and five or six others. As a result, plaintiff and the other five or six offenders were not able to attend the Jumah service the next day. They were able, but chose not, to attend services thereafter and did not return to Islamic services for 35 days.

Plaintiff also complained that, on another occasion inmate Powell stood by the door during the service to "watch over us." Plaintiff did not explain what the phrase "watch over us" meant and did not suggest any reason why an inmate would think it was his job to provide security for the service. He said defendant Chaplain KIPER arrived and asked for the attendance sheet and offender Powell gave it to him. Then KIPER asked Powell to step outside and Powell did so, returning later and sitting down. Then KIPER came back in and asked Powell to come outside again and Powell went outside where he and KIPER "had words." He said KIPER "put Powell out" and then plaintiff and all the other offenders, except the inmate coordinator and one other offender, left the service voluntarily in order to "make a statement" to Chaplain KIPER.

During the evidentiary hearing, defendants addressed the February 6, 2009 incident and presented AD 07.30 which covers security concerns during religious worship and states that the warden or his designee can discontinue a religious service, activity, meeting, or special observance that disturbs the orderly conditions of the unit[3] and that the warden or his designee can deny an inmate permission to attend religious activities if the offender's attendance could

---

[3] AD 07.30 at page 6.

affect the safe and secure operation of the unit or the safety of an individual offender[4].

The uncontroverted evidence presented at the hearing, including plaintiff's own testimony, was that there were two factions among the Muslim inmates at the February 6, 2009 meeting, those who supported the inmate coordinator (or at least didn't oppose him) and those (plaintiff's group) who opposed the coordinator and were unhappy that the previous coordinator had been replaced.

At the hearing, testimony was presented from both defendant KIPER and Islamic Chaplain Talib that the decision concerning what action to take was KIPER's to make, that Talib had made a recommendation, but had later agreed with KIPER when KIPER said he felt it would be better to suspend attendance by those offenders who had caused the disturbance. Uncontroverted testimony was received from Rory Murphy, Chaplain Supervisor for Region V, and from Islamic Chaplain Talib as to the reasonableness of defendant KIPER's decision to suspend the inmates he felt were causing the disturbance and disrupting the Islamic service from attending further services (which was a single service) until Chaplain Talib could get to the unit to resolve the problem. Both witnesses testified KIPER's decision was reasonable and authorized under TDCJ-CID policy.

Plaintiff seems to feel that, unless defendant KIPER can show that he, the plaintiff, personally, caused the disruption, defendant KIPER violated his civil rights by the one-service suspension. The evidence, however, shows defendant KIPER acted reasonably and in a good faith. Even if defendant KIPER made a mistake, he is entitled to be protected by qualified immunity.

---

[4]AD 07.30 at page 7.

As to the incident with offender Powell, testimony was received from defendant KIPER that offender Powell was standing by the door in the chapel and that offenders cannot stand by the door in that manner because they could alert others before KIPER or security staff could enter. Further, they could obstruct the view of those outside of the chapel so they couldn't monitor what was going on inside. KIPER stated offender Powell sat down when KIPER first told him to, but when KIPER came by again, Powell was standing in the door again. KIPER said he opened the door and again told Powell to sit down. Powell responded that he had permission to stand, so KIPER had him come back out into the hall. Powell did so and said he had written permission to stand there. Defendant KIPER testified that, on numerous occasions the offenders and their coordinators had been instructed not to have persons posted at the doors. Defendant KIPER said as he spoke with Powell, Powell became more agitated, and KIPER told him he needed to sit down or leave. Defendant KIPER testified he then returned to his office and, when he came out again, Powell was standing in the door again and said Mr. Shipp had authorized him to. By the time defendant KIPER got Mr. Shipp, Powell was sitting down. Mr. Shipp said he had not given Powell such permission and defendant KIPER then called Powell out and told him to bring his stuff because he would have to leave. Defendant KIPER testified he then went back into his office and a few moments later, Mr. Shipp came in and said all the offenders had left. Defendant KIPER said offender Powell did not grieve the incident and has not stood at the door since.

The uncontroverted evidence presented at the evidentiary hearing, shows defendant KIPER acted reasonably in response to offender Powell's repeated disobedience of the instructions and that the prohibition against standing in the doorway was reasonably related to a

legitimate penological interest. Moreover, there is no suggestion that requiring offender Powell to sit, instead of standing in the doorway, interfered with the free exercise of religion by Powell, by plaintiff, or by anyone else.

## CONCLUSION

For the reasons set forth above, and pursuant to Title 42, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(c)(1), it is the RECOMMENDATION of the Magistrate Judge to the United States District Judge that the Civil Rights Claims by plaintiff DERRIC LAFURR BROWN against defendant TEXAS DEPARTMENT OF CRIMINAL JUSTICE ID and against defendants KIPER, HARBOUR, and RICHARDSON IN THEIR OFFICIAL CAPACITIES be DISMISSED WITHOUT PREJUDICE PURSUANT TO Rule 12(b)(1), FEDERAL RULES OF CIVIL PROCEDURE AS BARRED BY SOVEREIGN IMMUNITY; plaintiff's claim for monetary relief be DISMISSED PURSUANT TO THE PLRA FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED AND AS FRIVOLOUS UNDER THE RLUIPA; plaintiff's claims against defendants RICHARDSON and HARBOUR be DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED and because defendants RICHARDSON and HARBOUR are entitled to qualified immunity against the claims asserted; and that plaintiff's claims against defendant KIPER be DISMISSED WITH PREJUDICE because KIPER has shown he is entitled to qualified immunity from plaintiff's claims.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

      IT IS SO RECOMMENDED.

      ENTERED this 17th day of May, 2012.

                                                */s/ Clinton E. Averitte*
                                                CLINTON E. AVERITTE
                                                UNITED STATES MAGISTRATE JUDGE

### * **NOTICE OF RIGHT TO OBJECT** *

      Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

      Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).